1

*E-FILED: March 25, 2013*

2

3

4

5

6

7                              NOT FOR CITATION

8             IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                             SAN JOSE DIVISION

11   THOMAS LUSBY, individually and on          No. C12-03783
     behalf of all others similarly situated,

12                                              **ORDER DENYING PLAINTIFF'S**
               Plaintiff,                       **MOTION TO TRANSFER AND**
13                                              **DENYING PLAINTIFF'S MOTION**
        v.                                      **FOR PRELIMINARY APPROVAL OF**
14                                              **THE CLASS ACTION SETTLEMENT**
                                                **AGREEMENT**
     GAMESTOP INC., GAMESTOP
15   Corporation, and DOES 1 through 100,       **(Dkt. 2, 19)**
     inclusive,

16
               Defendants.
17   _____/

18          In this putative class action, Thomas Lusby ("Plaintiff" or "Lusby") brings a variety of state

19   law claims against Gamestop Inc. and Gamestop Corporation ("Gamestop" or "Defendants") for

20   Defendants' alleged policy of (1) requiring its overtime-eligible employees to remain at work after

21   completion of workers' ordinary duties, without paying wages; (2) requiring its overtime-eligible

22   retail employees to submit to mandatory security checks without paying them for their time, (3)

23   failing to pay compensation owing in a timely manner to workers whose employment has

24   terminated; (4) failing to provide accurate semimonthly itemized pay statements; (5) failing to

25   provide meal and rest periods; and (6) failing to reimburse employees for business expenses. *See*

26   Complaint for Damages, Injunctive Relief, and Restitution (Dkt. 1) ("Complaint" or "Compl.").

27   This suit was filed in the San Jose Division and assigned to the undersigned in July 2012. Filed

28   simultaneously with the complaint was plaintiff's motion for an order (1) granting preliminary

approval of the class action settlement agreement; (2) granting conditional certification of the

settlement class; (3) appointing class counsel; (4) appointing class representative; (5) appointing

claims administrator; and (6) approving class notice and claim form and timeline for administration.

The parties consented to proceed before a Magistrate Judge, and the Court held a hearing on

Plaintiff's motions on September 18, 2012.  Subsequent to the hearing, Plaintiff moved to transfer

the case to the Central District of California for assignment to the Honorable Otis D. Wright II.  For

the reasons set forth below, the Court denies Plaintiff's motions.

<strong>BACKGROUND</strong>

**A.  Procedural History**

This case did not begin in this Court, or in July 2012.  In January 2009, another group of

plaintiffs, represented by a different plaintiffs' law firm, brought similar claims against Defendants

in the Superior Court of the State of California, County of Los Angeles ("Gamestop I").  *See*

*Barrera v. Gamestop Corp. et al.*, No. 09-cv-01399 (C.D. Cal.).  Six months later, another group of

plaintiffs filed suit against Gamestop in the same court, alleging related claims ("Gamestop II").

*See Neuvenheim v. Gamestop Corp. et al.*, No. 09-cv-06799 (C.D. Cal.).  The Class Period in

Gamestop I was January 23-*June 21, 2010*; the Class Period in Gamestop II was July 23, 2005-*June

21, 2010.  See id.*  Gamestop removed both cases to the Central District of California, the cases were

related, and the Honorable Otis D. Wright presided over both suits.  The court granted final approval

of a settlement agreement in Gamestop I and Gamestop II in November 2010.  Gamestop I settled

for approximately $3.25 million and Gamestop II settled for approximately $4.7 million.

A little over eight months after the court granted final approval of the settlements reached in

Gamestop I and Gamestop II, plaintiff Thomas Lusby filed a purported class action in the Superior

Court of the State of California, County of San Francisco, alleging similar claims against Gamestop,

but with a class period of *June 21, 2010* through June 30, 2012 ("Gamestop III").  Defendants

removed the action to the Northern District of California, San Francisco Division, and, after the

2

parties declined to proceed before a Magistrate Judge, the case was reassigned to the Honorable

William Alsup.  *Lusby v. Gamestop Inc. et al.*, No. 11-CV-05361 (N.D. Cal.) (WHA).

Judge Alsup has a practice of issuing a "Notice Regarding Factors to be Evaluated For any

Proposed Class Settlement" for purported class actions and he issued the notice in Lusby's suit.  The

notice *prohibits* discussion of class settlement before class certification.  The parties voluntarily

dismissed the action shortly after receiving Judge Alsup's notice.  After dismissal, the parties

participated in private mediation and subsequently reached a class settlement.  Thereupon, Lusby re-

filed the current action in the San Jose Division of the Northern District and, simultaneous with the

filing of the Complaint, moved for preliminary approval of the class settlement.  (Dkt. 1, 2).  The

current Complaint is nearly identical to the complaint Lusby filed in state court, before it was

removed to the San Francisco Division of the Northern District.[1]  The Complaint alleges claims for:

(1) Failure to Provide Meal and Rest Periods (Cal. Labor Code §§ 226.7 and 512);

(2) Unlawful Failure to Pay Wages (IWC Wage Order and Labor Code §§ 200-204, 510, 1194, and 1198);

(3) Failure to Provide Accurate Itemized Wage Statements (Cal. Labor Code §§ 226 and 1174);

(4) Failure to Pay Wages on Termination (Cal. Labor Code § 203);

(5) Failure to Reimburse Expenses and/or Prohibited Cash Bond (Cal. Labor Code §§ 406 and 2802);

(6) Unfair Business Practices Under the Unfair Competition Act (Cal. Business & Professions Code §§ 17200-17208); and

(7) Violations of the Private Attorneys General Act (Cal. Labor Code §§ 2699).

*See* Compl.

---

[1] In fact, the Complaint alleges jurisdiction under California state law, instead of federal law. Compl. ¶¶ 8-9.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Plaintiff purports to represent a class described as: "All persons who are and/or were employed as overtime-eligible employees by GameStop, in one or more of GameStop's California retail stores, between June 21, 2010 and June 30, 2012." Compl. ¶ 17. The Complaint does not, however, specify what job position Plaintiff held, how long he held it, what his job duties were, what his hourly rate was, or whether he is a current or former employee. *Id.* ¶¶ 1, 11. According to the parties, the class comprises 13,872 individuals. Notice of Motion and Motion; Memorandum of Points and Authorities in Support of Plaintiff's Motion for Order: (1) Granting Preliminary Approval of the Class Action Settlement Agreement; (2) Granting Conditional Certification of the Settlement Class; (3) Appointing Class Counsel; (4) Appointing Class Representative; (5) Appointing Claims Administrator; and (6) Approving Class Notice and Claim Form and Timeline for Administration (Dkt. 2) ("Motion") ¶ 6.

With the re-filing, the parties consented to proceed before a United States Magistrate Judge. At the hearing on Plaintiff's motion for preliminary approval, the undersigned inquired about the procedural history of this case, the basis for federal jurisdiction, and the fairness of the proposed settlement. The Court then ordered the parties to file an administrative motion to consider whether the case re-filed in the San Jose Division of Northern California should be related to the case that was previously before Judge Alsup. (Dkt. 17).

Before filing the court-ordered motion with Judge Alsup, Plaintiff filed a motion with the undersigned to transfer the case to the Central District of California for assignment to Judge Wright.[2] Plaintiff then filed the administrative motion with Judge Alsup. Judge Alsup declined to relate the cases because, although the two suits were substantially similar, there would be no "unduly burdensome duplication of labor and expense or conflicting results if the cases [were]

---

[2] Plaintiff filed both motions on the same day, but filed the motion to transfer first. (Dkt. 19; No. 11-CV-05361 (N.D. Cal.) (WHA), Dkt. 18.)

conducted before different Judges" because there was not a single hearing in the first-filed action and Plaintiff voluntarily dismissed the suit before Judge Alsup conducted the initial case management conference.  No. 11-CV-05361 (N.D. Cal.) (WHA), Dkt. 19.  In the order finding the cases not related, Judge Alsup noted his suspicions as to why the parties voluntarily dismissed the earlier-filed action.  "The undersigned wishes to inform Judge Lloyd that the parties' conduct has eluded the undersigned's notice prohibiting settlement discussion prior to certification."  *Id.*  The Court held a hearing on Plaintiff's motion to transfer on November 13, 2012.

## DISCUSSION

### A.  Plaintiff's Motion to Transfer

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses," and "in the interest of justice," a District Court may transfer any civil action to any other district or division where it might have been brought.  When deciding whether to transfer a case, courts consider:

(1) Plaintiff's choice of forum;
(2) Convenience of the parties;
(3) Convenience of the witnesses - the ability to mandate attendance of unwilling witnesses and the cost of obtaining willing witnesses;
(4) Where events took place, and the relative ease of access to the evidence;
(5) Familiarity of each forum with the applicable law;
(6) Any local interest in the controversy; and
(7) The relative court congestion and time of trial in each forum.

*See Decker Coal Co. v. Commonwealth Edison Co*., 805 F.2d 834, 842–43 (9th Cir. 1986).

Here, Plaintiff's first choice of forum was the Superior Court for the State of California in the County of San Francisco.  Plaintiff's second choice of forum, when he re-filed his action, was this Court.  The Court gives little weight, now, to Plaintiff's *third* choice of forum, expressed only after this Court reviewed motion papers and heard oral arguments on the pending motions for preliminary approval of a class settlement.  Plaintiff does not argue that the convenience of the parties, the convenience of the witnesses, where events took place, the relative ease of access to the evidence, the local interest in the controversy, or the relative court congestion and time of trial favor

United States District Court
For the Northern District of California

1   transfer to the Central District.  Plaintiff's sole argument is that transfer to the Central District will

2   be more efficient for the Court and the parties because Judge Wright previously oversaw the

3   approval process of essentially the same settlement as the settlement proposed in this suit.[3]

4            The Court finds this efficiency argument unavailing as it has already reviewed the moving

5   papers and conducted a hearing on all pending motions.  Moreover, every judge in both the

6   Northern District of California and the Central District of California has familiarity with putative

7   class action complaints alleging garden-variety wage and hour violations.  The "different plaintiff

8   names, class periods, dollar amounts, etc." are what differentiate all of these cases.  *See* FN 3.

9   Finally, the Central District of California is no less busy than the Northern District of California[4],

10  and, there is no guarantee that an order transferring the case to the Central District of California will

11  ultimately result in an assignment to Judge Wright.  Plaintiff's motion to transfer is denied.

**B.  Plaintiff's Motion For Preliminary Approval of Settlement Agreement**

**1.   Proposed Settlement**

14           Under the proposed Settlement Agreement, Defendants have agreed to pay a Maximum

15  Settlement Amount of no more than $750,000.  Desario Declaration, Ex. A (Dkt. 3-1) ("Settlement

16  Agreement") ¶ 28.  As the Court understands it from the explanation provided at the hearing, the

17  parties arrived at this number by calculating the number of shifts "at issue" during the two-year

18  Class Period.  The Court does not know whether the parties calculated the number of shifts actually

19  worked by class members, or whether it simply calculated the number of work shifts available

20  during the Class Period.  The parties then agreed to a payment of 45 cents per shift.  The Maximum

21  Settlement Amount roughly represents the number of shifts "at issue" during the Class Period,

22  multiplied by 45 cents.  The parties then agreed to *subtract* from this number the following:

[3] Plaintiff admits that "the proposed settlement herein is simply a re-drafted version of the [Gamestop II] settlement with different plaintiff names, class periods, dollar amounts, etc." (Plaintiff's Motion to Transfer, Dkt. 19, FN 11.)

[4] The Federal Court Management Statistics for the fiscal year ending September 30, 2012 show both districts as busy: Total Filings per Judge: 602 (N.D. Cal.), 659 (C.D. Cal.); Median Time in months from Filing to Disposition of Civil cases: 6.4 (N.D. Cal.), 5.2 (C.D. Cal.).  *See* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-september-2012.aspx

United States District Court
For the Northern District of California

6

United States District Court
For the Northern District of California

- Attorney's fees (not to exceed $250,000; based on 33.33% of the Maximum Settlement Amount);
- Litigation costs (not to exceed $12,000);
- An enhancement payment to Lusby (not to exceed $7,500);
- Settlement administration costs (not to exceed $40,000);
- Claims Administration Expenses (in "a reasonable amount");
- Payment to California's Labor and Workforce Development Agency ("LWDA") for a release of PAGA claims ($3,750)[5];
- Gamestop's portion of payroll taxes and related withholdings

*Id.* ¶ 53.  The amount available to pay class members, which the parties call the "Net Settlement Amount," is the Maximum Settlement Amount of $750,000, less the above payments and costs. The Net Settlement Amount would be roughly $436,750, less Claims Administration Expenses and taxes.  Payment of attorney fees and the other deductions significantly erode the 45 cents per shift benchmark.  By the Court's calculation, subtraction of the above payments and costs reduces the Maximum Settlement Amount by about 58%, which means that the money actually available for payment to Class Members represents approximately 26 cents per shift.

Although the parties calculated the Maximum Settlement Amount based on shifts, counsel stated that the Net Settlement Amount would be distributed based on the number of weeks each Class Member worked during the Class Period.[6]  To calculate the distribution to individual class members, the Claims Administrator would "calculate *pro rata* settlement payments to Class Members based on each Class Member's relative percentage of eligible employee service time in the Settlement Class as reflected on GameStop's internal records."  *Id.* ¶ 57.  So, through some unknown formula, the roughly $436,750 would be available for distribution to the 13,872 Class

---

[5] A total of $5,000 from the Maximum Settlement Amount is allocated to PAGA penalties; $1,250 (25%) is going toward the Settlement Class, and $3,750 (75%) is going to LWDA.  *Id.* ¶ 53.
[6] It does not seem to the Court that the number of weeks each Class Member worked would necessarily capture the amount of time, or overtime, that each Class Member worked.  At the hearing, Counsel stated that most of the class members were part-time employees who worked part-time shifts.  Work weeks, as opposed to shifts or actual hours worked, do not appear to be a very accurate measure of employee time spent working for Defendants.  It also seems illogical to base the Maximum Settlement Amount on one measure (shifts), but to base distribution on another measure (work weeks).

7

Members based on the number of weeks each worked, relative to one another. As the distribution appears only to account for the number of weeks each Class Member worked, it ignores an individual's pay rate, how many shifts the individual actually worked, or the specific amount of overtime each individual may have worked.

The claims administrator would mail a court-approved Notice of the Class Action Settlement and a court-approved Claim Form. *Id.* ¶ 67. The Notice would state the estimated minimum settlement payment that the Class Member could receive if he or she participated in the settlement. *Id.* Plaintiff proposes allowing Class Members thirty days to submit their claim form, opt-out, or object to the settlement. *Id.* ¶¶ 68, 70, 74. Class Members opt-out by submitting a written Request for Exclusion. If Class Members do nothing, they are bound by the Release in the Settlement but will not be considered Qualified Claimants for settlement distribution purposes. *Id.* ¶ 73. The parties would allocate a $15,000 Late Claims Fund from the Maximum Settlement Amount that would be distributed to Class Members who file claims postmarked within 45 days of the deadline to submit claims. *Id.* ¶ 60. If the payments for class members' late claims exceeded $15,000, the Late Claim Fund would be allocated to all those filing acceptable late claims on a *pro rata* basis *Id.* ¶ 60. Any unclaimed amount of the Late Claims Fund reverts to GameStop. *Id.* ¶ 60.

In exchange for the settlement payment, or if the Class Members do not submit a written Request for Exclusion within 30 days, Class Members release "any and all wage and hour claims that were or could have been alleged in the Complaint or any Amended Complaint." *Id.* ¶ 9. The Release specifically includes, but "is not limited to":

(1) Any and all wage and hour claims under California law that accrued or accrue prior to June 30, 2012, and that were or could have been asserted in the Complaint;

(2) Claims under any legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages, failure to reimburse for business expenses and/or failure to furnish accurate wage statements;

(3) Any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, and/or penalties;

(4) Penalties under PAGA;

(5) Claims under California's Wage Orders;

(6) Claims under the California Labor Code including but not limited to Sections 201, 202, 203, 204, 210, 212, 221, 222, 225.5, 223,224, 226, 226.3, 226.7, 227, 510, 512, 558, 1194, 1197, 1197.1, 1198, 2802, and 2698 et seq.;

(7) All waiting time penalties that were sought or could have been sought in the Complaint,

(8) Claims under the Employee Retirement Income Security Act ("ERISA");

(9) "[O]ther penalties";

(10) Related tort and punitive damages claims; and

(11) Violations of the California Business & Professions Code.

*Id.* If Class Members affirmatively opt-in to the Settlement Class, they will also release all claims under the Fair Labor Standards Act. *Id.*

Defendants are required to pay 30% of the Net Settlement Amount (roughly $131,025, less Claims Administration Expenses and taxes) ("Minimum Settlement Amount"), but any unclaimed amount above the $131,025 reverts to Defendants. *Id.* ¶ 58. At the hearing on Plaintiff's motion to transfer, counsel for Defendants stated that, based on Gamestop I and Gamestop II, counsel for Plaintiff and Defendants expect about 30% of the Class Members to opt-in. So, counsel for both parties expect Defendants to pay a total of about $131,025 to Class Members.

Any portion of the Maximum Settlement Amount remaining after the above –listed Attorneys fees, costs, and other payments remains the property of the Defendants. *Id.* at ¶ 53. That is, any unclaimed portion of the Net Settlement Amount above 30%, and any remaining funds from the Maximum Settlement Amount, revert back to Defendants. Defendants have agreed not to object to the amount of attorneys fees, costs, or the enhancement award. *Id.* Plaintiff's attorney fees are

United States District Court
For the Northern District of California

insulated from the number of Class Members who opt-in to the Settlement Agreement, and, generally, the fewer Class Members who opt-in, the less money Defendants have to pay.

The settlement does not provide for any type of injunctive relief.

### 2. Applicable Law

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1276 (9th Cir. 1992). Where parties reach a settlement agreement prior to class certification, however, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

First, the court must assess whether a class exists. This assessment "demand[s] undiluted, even heightened, attention in the settlement context." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). This level of attention "is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Second, the district court must carefully consider "whether a proposed settlement is fundamentally fair, adequate, and reasonable," recognizing that "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp*. 150 F.3d 1011, 1026 (9th Cir. 1998) (citations omitted). To determine whether a proposed settlement is fair, reasonable, and adequate, the court must examine whether the interests of the class are better served by the settlement than by further litigation. Ann. Manual Complex Lit. § 21.61 (2012). Although the court's role in reviewing a proposed settlement is critical, it is also a limited one. The court does not have the ability to "'delete, modify or substitute certain provisions.' The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), citing *Officers for Justice v. Civil Serv. Comm'n of San*

10

*Francisco*, 688 F.2d 615, 628, 630 (9th Cir. 1982). The court may, however, voice its reservations about the proposed settlement and set conditions that, if satisfied, might lead the court to approve it. Manual for Complex Litigation (Fourth) § 21.61 (2004).

### 3. Class Certification

The district court has discretion to certify a class action under Rule 23 of the Federal Rules of Civil Procedure. *Meyer v. Portfolio Recovery Assocs., LLC*, 696 F.3d 943, 947 (9th Cir.2012). To obtain class certification, the plaintiff must satisfy the four prerequisites identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). Certification under Rule 23(b)(3) is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods. Fed. R. Civ. P. 23(b)(3). The party seeking class certification must affirmatively demonstrate that the class meets the requirements of Rule 23. *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).

### a. Rule 23(a)

#### 1. Numerosity

The numerosity requirement mandates that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ.P. 23(a)(1). In addition, the class should be "ascertainable," *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009), meaning that the class definition must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member," *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). Here, Defendants' records establish that there are 13,872 class members who were

classified as overtime-eligible employees during the class period. *See DeSario* Declaration (Dkt. 3) ("DeSario Decl.") ¶ 16. This is facially sufficient to satisfy Rule 23's numerosity and ascertainability requirements. *See Hanlon*, 150 F.3d at 1019 ("The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'") (quoting in part Rule 23(a)(1)).

## 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Commonality focuses on the relationship of common facts and legal issues among class members. *See, e.g.*, 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3:10 at 271 (4th ed. 2002). This requirement is met through the existence of a "common contention" that is of "such a nature that it is capable of classwide resolution[.]" *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2551. "What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of commons answers." *Id.* (*quoting* Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 132 (2009)).

Plaintiff attempts to satisfy the commonality requirement by listing various legal issues— namely, the California statutes allegedly violated by Defendants—which he contends are common to the class. *See* Motion for Preliminary Approval at 8. But, part of the complaint appears to be the misclassification of several categories of employees as exempt from overtime pay.[7] However, Plaintiff makes no effort to identify his job position or duties relative to the class.[8] The Complaint

---

[7] "Plaintiff has litigated this case in good faith and the interests of Plaintiff are coextensive with those of the members of the Settlement Class as they both share a common interest in challenging GameStop's policy concerning the exempt classification of its retail employees." Motion at 9.

[8] The proposed Notice of Settlement of Class Action Lawsuit is addressed to "[a]ll current and former GameStop employees who held the position of Store Manager, Store Manager in Training,

also alleges damages for waiting time penalties, which would be due to severed or terminated class members if Defendants were found liable on any of the class claims. But, according to Plaintiff, only 6,936 of the 13,872 Class Members are severed or terminated. Plaintiff's Motion to Transfer (Dkt. 19) at 4. The remaining Class Members are presumably current employees. So, half of the Class Members would be entitled to certain penalties sought in the Complaint, but the other half would not. The only common thread alleged is that they were all entitled to overtime. Because it is highly unlikely that all positions and job duties at Defendants' retail stores are identical, and that all Class Members would be seeking the same relief, the Court is not persuaded that there are no dissimilarities in the proposed class that could "impede the generation of common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2551 (quoting Nagareda at 132); *see also Nielson v. Sports Authority*, No. C 11-4724 SBA, 2012 WL 5941614, at *3 (N.D. Cal. Nov. 27, 2012) (finding no commonality between named plaintiff, whose position and duties were unidentified, and purported class of "[a]ll persons who are and/or were employed as non-exempt employees" in retail stores during the class period); *Tijero v. Aaron Brothers, Inc.*, No. C 10-01089 SBA, 2013 WL 60464, at *4 (N.D. Cal. Jan. 2, 2013) (plaintiffs' claims that they and the class members were subject to the same policies were insufficient to satisfy commonality requirement where plaintiffs failed to specifically identify all the job positions they sought to represent, or their duties relative to the job positions they sought to represent); *Kelley v. SBC, Inc.*, No. C 97–2729 CW, 1998 WL 1794379, at *14 (N.D.Cal. Nov. 18, 1998) (finding in purported class action alleging overtime claims that commonality only existed as to class members who shared the job positions actually held by the plaintiff.) Thus, Plaintiff has failed to establish commonality under Rule 23(a).

### 3. Typicality

Store Manager Designate, Assistant Store Manager, Senior Game Advisor, Lead Game Advisor, and Game Advisor." DeSario Decl. Ex. A, Ex. 1 (Dkt. 3-1). Neither the Complaint nor any of the moving papers identify which position Lusby held.

United States District Court
For the Northern District of California

Typicality focuses on the relationship of facts and issues between the class and its representative. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (citation and internal quotation marks omitted).

Plaintiff contends that "[t]ypicality is met here as the claims of the Settlement Class are based on the same legal and factual claims as that of the Plaintiff." Motion at 9. Though Plaintiff fails to elaborate further on this conclusory assertion, the Court presumes that Plaintiff is alleging that he and the class suffered the same injury; that is, Defendants' misclassification of employees and concomitant failure to pay overtime and provide meal and rest periods in violation of California law.[9] Courts have found Plaintiff's theory of typicality acceptable— but only as to the positions that the plaintiff actually held. *See Campbell v. PriceWaterhouseCoopers, LLP*, 253 F.R.D. 586, 603 (E.D.Cal. 2008); *accord Kelley*, 1998 WL 1794379, at * 15. In this case, Plaintiff fails to specify what position or positions he held or holds. Given the absence of this information, the Court finds that Plaintiff has failed to establish that his claims are typical of those of the class. Further, as mentioned above, half of the Class Members would be entitled to penalties that the other half are not entitled to. Whether Plaintiff is a terminated or current employee of Defendants, his claims are not typical of half of the class.

### 4. Adequacy of Representation

---

[9] Though the Complaint itself is very vague, Plaintiff's Motion states that "the interests of Plaintiff are coextensive with those of the members of the Settlement Class as they both share a common interest in *challenging GameStop's policy concerning the exempt classification of its retail employees*." Motion at 9 (emphasis added).

Members of a class may sue as representatives on behalf of the class only if they will fairly and adequately protect the interests of the class as a whole. Fed. R. Civ. P. 23. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. While there is nothing to indicate that Plaintiff or his counsel has any conflicts of interest with putative class members or that their interest in the case is insufficient to ensure vigorous representation, no specific information is provided about Plaintiff beyond his being an overtime-eligible employee who worked at one or more of Defendants' California retail stores. In the absence of such information, the Court cannot conclude, at this juncture, that Plaintiff is an adequate class representative.

### b. Rule 23(b)

Finally, Plaintiff has not sufficiently demonstrated that it would be appropriate to certify the settlement class under Rule 23(b)(3). This provision requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b) (3). These provisions are referred to as the "predominance" and "superiority" requirements. *See Hanlon*, 150 F.3d at 1022–23.

Plaintiff contends that the requirements of Rule 23(b)(3) are satisfied, ostensibly because Plaintiff and class members seek the same relief as a result of the same policy of misclassifying overtime-eligible employees and then failing to pay appropriate overtime wages and provide meal and rest periods. *See* Motion at 9-10. First, due to their status as either current or former employees, half of the Class Members are seeking different relief than the other half. Second, to secure certification under Rule 23(b)(3), Plaintiff must offer more than vague references to

15

United States District Court
For the Northern District of California

1   "company-wide common policies and procedures."  *See id.* at 10.  Whether a company-wide

2   common policy is in place or not, courts must still ask where the individual employees actually

3   spent their time, and what duties each individual performed.  *In re Wells Fargo Home Mortg.*

4   *Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009); *Campbell,* 253 F.R.D. at 603 ("[t]he fact

5   that an employer classifies all or most of a particular class of employees as exempt does not

6   eliminate the need to make a factual determination as to whether class members are actually

7   performing similar duties.")  As Plaintiff's motion provides no such elucidation, the Court finds that

8   Plaintiff has failed to satisfy the predominance and superiority requirements of Rule 23(b)(3).

9

10        In sum, the Court concludes that Plaintiff has failed to demonstrate that class certification

11  under Rule 23(a) and (b)(3) is warranted in this action.

12

13        **4.  Fairness of the Settlement**

14        Rule 23 requires the Court to approve any settlement of the "claims, issues, or defenses of a

15  certified class."  Fed.R.Civ.P. 23(e).  The decision of whether to approve a proposed class action

16  settlement entails a two-step process.  *See* Manual for Complex Litig. § 21.632 (4th ed. 2004).  The

17  Court first conducts a preliminary fairness evaluation.  *Id.*  If the Court preliminarily approves the

18  settlement, notice to the class is then disseminated and a "fairness" or final approval hearing is

19  scheduled.  *Id.*  The second step of the process culminates in a fairness hearing at which the

20  proponent of the settlement must demonstrate that the settlement is "fair, reasonable, and adequate."

21  *Id.*; Fed. R. Civ. P. 23(e)(2).  "The purpose of Rule 23(e) is to protect the unnamed members of the

22  class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d

23  1095, 1100 (9th Cir. 2008) (citation omitted).

24

25

26        "The initial decision to approve or reject a settlement proposal is committed to the sound

27  discretion of the trial judge."  *Officers for Justice v. Civil Serv. Comm'n of the City and County of*

28  *San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Where, as here, a settlement has been reached

prior to formal class certification, "a higher standard of fairness" applies due to "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative[.]" *Hanlon*, 150 F.3d at 1026.

To make a fairness determination, the district court must balance a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). Given that some of these "fairness" factors cannot be fully assessed until the Court conducts the final approval hearing, a full fairness analysis is not necessary for preliminary approval. *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted). Rather, preliminary approval of a settlement and notice to the proposed class is appropriate: if "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval...." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Manual for Complex Litigation, § 30.44 (2d ed.1985)).

### a.   The Settlement Process

Here, the settlement was reached after the parties dismissed the action that had been assigned to Judge Alsup. The parties participated in private mediation, which "tends to support the conclusion that the settlement process was not collusive," *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390 at *6 (N.D. Cal. 2012). This mediation, however, occurred outside the shadow

United States District Court
For the Northern District of California

1  of the Court – there was no pending case at the time of the mediation.  Plaintiff states that, prior to

2  the mediation session, counsel for Plaintiff submitted a "thorough Mediation Brief summarizing the

3  facts and legal theories surrounding Plaintiff and the class's claims, the state of the applicable law,

4  and a comprehensive class-side damages analysis." DeSario Decl. ¶ 9.  Plaintiff also states that the

5  parties engaged in an "informal data exchange and pre-filing investigation" that "apprised Class

6  Counsel of the potential litigation risks facing Plaintiff and the class members." *Id.* ¶ 11.  Through

7  the mediation, the parties reached an agreement in principle to settle the litigation (even though

8  there was no pending litigation).  The parties reached a final settlement agreement about three

9  months after the mediation.  After reaching the settlement, the parties re-filed the case in the San

10  Jose Division, filing their complaint and request for settlement simultaneously.  Although counsel

11  for Plaintiff claims that the Settlement was reached "only after extensive, hard-fought adversarial

12  negotiations," such efforts apparently occurred without the Court's oversight, through means other

13  than traditional motion practice.  The case history, by itself, does not suggest that the case was

14  litigated very vigorously on behalf of the class members.

15  **b.  Obvious Deficiencies**

16  **a.  Scope of the Release**

17  The release provision of the Settlement Agreement provides that "[a]ll Class Members shall

18  be bound by this release whether or not they return the Claim Form necessary to receive payment of

19  their allocated settlement amount, unless they formally opt-out." Settlement Agreement ¶ 9.  The

20  Court has concerns about this provision.  The Settlement Agreement provides that a class member

21  shall be a member of the class and shall be bound by all terms of the Settlement Agreement unless

22  he or she submits a valid request for exclusion.  *Id.*; *see also id.* ¶ 59.  There is no provision in the

23  Settlement Agreement that excludes putative class members from the Settlement Class whose class

24  notice is returned as undeliverable by the United States Post Office.  The Settlement Agreement

only provides that, "[w]ith respect to any returned envelopes, the Claims Administrator shall take reasonable steps to locate any Class Member whose Class Notice is returned as undeliverable, such as a skip trace procedure to obtain a current address and, if an updated address is located, then re-mail the envelope to such address within five (5) calendar days of the receipt of the returned envelope."  Settlement Agreement ¶ 66.

Thus the Settlement Agreement appears to provide that if class notice is undeliverable to a class member, that member will not receive a settlement payment but will nonetheless release "any and all wage and hour claims that were or could have been alleged in the Complaint." *Id.* ¶ 9.  The Court finds that this aspect of the Settlement Agreement does not give due process to Class Members who are known not to have received notice of the Settlement Agreement, and yet are bound by its terms. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1999) ("before an absent class member's right of action was extinguishable due process require[s] that the member 'receive notice plus an opportunity to be heard and participate in the litigation,' and ... 'at a minimum ... an absent plaintiff [must] be provided with an opportunity to remove himself from the class.'"); *Kakani*, 2007 WL 1793774, at *2–3, 5–6 (rejecting a settlement in part because the settlement agreement provided that class members were bound by the terms of the settlement agreement, including the release, even if the member did not receive notice of the settlement); *Tijero*, 2013 WL 60464 at *9-10 (same).

### b.  Opt-Out and Objection Period

The Court also has concerns about the parties' proposal that class members should only have thirty days to submit their claim form, opt-out, or object to the settlement.  Settlement Agreement ¶¶ 68, 70, 74.  The short period proposed by the parties is likely to decrease the number of opt-ins, opt-outs, and objections submitted.  This undoubtedly benefits Defendants -- particularly where, as here, the settlement provides that unclaimed settlement funds above a minimum amount revert to

United States District Court
For the Northern District of California

Defendants.  Settlement Agreement ¶ 53.  Plaintiff's concern, however, should be in protecting the interests of the class, not those of Defendants or the attorney fee award sought by his counsel, which will remain the same regardless of the number of class members submitting claim forms.

The Court finds that the parties' proposal does not adequately protect the interests of the class, which includes providing class members sufficient time to make a fully informed decision on whether to participate in this action and, if so, whether any objection is appropriate.  Thus, should Plaintiff attempt to renew his motion for preliminary approval, he should ensure that class members are afforded at least sixty days to submit their claim form, opt-out, or object to the settlement.  *See Nielson v. The Sports Authority*, No. C 11-4724 SBA, 2012 WL 5941614 at *6 (N.D. Cal. Nov. 27, 2012) (rejecting settlement in part because settlement agreement only allowed thirty days for class members to submit claim forms); *c.f. Sanchez v. Sephora USA, Inc.*, No. C 11–03396 SBA, 2012 WL 2945753 at *6 (N.D.Cal. July 18, 2012) (noting that in Fair Labor Standard Act collective actions, courts generally provide sixty to ninety days to opt in).

### c.  Preferential Treatment

Under the third factor, the Court examines whether the settlement provides preferential treatment to any class member. The Settlement Agreement provides that settlement payments to class members are to be based on each Class Member's "relative percentage of eligible employee service time in the Settlement Class as reflected on GameStop's internal records."  Settlement Agreement ¶ 57.

At this juncture, the Court is not satisfied that the allocation of the settlement fund does not unfairly benefit certain class members.  Plaintiff seeks to represent a class of all overtime-eligible employees employed by Defendants in California between June 21, 2010 and June 30, 2012.  This class includes current and former Store Managers, Store Managers in Training, Store Manager Designates, Assistant Store Managers, Senior Game Advisors, Lead Game Advisors, and Game

Advisors.  *See* Notice of Settlement of Class Action Lawsuit, Ex. 1 to Ex. A of Desario Decl.  (As mentioned before, the Court is left to guess as to which position Lusby himself held).  Plaintiff makes no effort to identify the range of hourly wages paid to employees in the various job positions he seeks to represent or explain why a settlement payment based entirely on weeks worked[10] does not provide preferential treatment to class members who worked on a part-time basis and/or were paid at a lower hourly rate.  It is highly unlikely that all overtime-eligible employees at Defendants' stores were paid the same rate or worked the same number of overtime hours per week.  The Court does know, however, that half of the Class Members could be entitled to waiting time penalties that the other half is not entitled to.  Because the Settlement Agreement directs that settlement payments be made based simply on the number of weeks an individual worked during the class period, the Court is not persuaded that the settlement does not provide preferential treatment to certain segments of the class.  *See Tijero*, 2013 WL 60464 at *10 (rejecting settlement, in part because payment to class members was based solely on pay periods worked, without regard to pay rates or actual hours worked).

### c.  Range of Possible Approval

Lastly, the Court must consider whether the settlement falls within the range of possible approval.  To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F.Supp. 2d at 1080.  Here, Plaintiff contends that the settlement is "clearly fair, adequate, and reasonable and that it provides for reasonable compensation to Class Members."  Motion at 15.  The Declaration in support of the motion for approval also states that "Class Counsel recognizes the substantial

---

[10] At the hearing, counsel for Plaintiff further clarified that the payments were tied to weeks worked, as opposed to overtime hours worked, or even shifts worked.

monetary benefit to the Class and the expenses and length of continued proceedings necessary to prosecute the Action against the Settling Defendants through class certification, trial and possible appeals." DeSario Decl. ¶ 48.

The Court is at a loss as to (1) how the settlement is "clearly fair, adequate, and reasonable," (2) what "substantial monetary benefit" it provides to Class Members, and (3) whether the settlement is within the range of possible approval. Most fundamentally, neither the Complaint nor the proposed Settlement Agreement reveal what this case is actually about! The Complaint is extremely broad, and equally vague. The release, in turn, is extremely broad. The "monetary benefit" to each Class Member, however, is actually *de minimus*. The money actually available to the Class Members represents about 26 cents per shift, from a pool of money divided between 13,872 Class Members. This *de minimus* amount is hardly the "substantial monetary benefit" reported by class counsel. DeSario Decl. ¶ 48. Further, the Settlement Agreement does not include a provision for any injunctive relief, which would seem important in light of the fact that this is the third suit alleging the same claims against Defendants.

The papers submitted to the Court do not explain the correlation between the Complaint, the release in the Settlement Agreement, and the amount of money designated to each class Member. Plaintiff filed a generic complaint, alleging a broad range of state law wage and hour claims, and the Settlement Agreement releases Defendants from all wage and hour claims, including claims arising from the potential misclassification of over 13,000 employees as not eligible to receive overtime pay.

When pressed at the hearing to explain the seemingly *de minimus* amounts available to the Class Members, compared to the array of violations alleged in the Complaint, and the array of claims released in the Settlement Agreement, counsel explained the *actual* basis of the proposed payments. Gamestop is a video game and entertainment software retailer. Gamestop conducts

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

security inspections, or "pocket checks," on its employees and their bags, which typically last "seconds to minutes." Gamestop conducts the checks to ensure that employees do not leave with store merchandise. The theory of liability accounted for in the payments to Class Members is Plaintiff's contention that the security inspections were conducted after employees had clocked out of work, or when they were on their way to a lunch or rest break. The payment to each Class Member apparently relates to seconds or minutes of unpaid time, based on some unknown but uniform pay rate (a uniform rate that cannot correspond to the pay rate actually paid to the individuals holding the range of job titles included in the class definition). At the hearing, counsel conceded that the amount actually paid to class members would in fact be *de minimus*.

Although counsel at the hearing provided some insight into the basis of the proposed *de minimus* payments, counsel did not explain why the rest of the claims asserted in the Complaint, and released by the terms of Settlement Agreement, were discounted so heavily or just plain ignored. If the Class Members are being paid for previously unpaid time spent undergoing pocket checks, it seems that they should release wage and hour claims that arise from the time spent undergoing these checks – not every conceivable wage and hour claim. The release in the Settlement Agreement is not tailored to the relief provided in the Settlement Agreement. The *de minimus* payment to each Class Member is at odds with the sweeping allegations of the complaint, and the sweeping release in the settlement agreement. This incongruity is particularly inexcusable in light of the procedural history of the case and the provision of the Settlement Agreement instructing Class Counsel to "prepare and file a complaint reflecting the claims to be released by this Settlement." Settlement Agreement ¶ 51. The parties apparently agreed to a settlement based on an extremely narrow theory of liability. After that, Class Counsel filed a complaint asserting, not the narrow theory of liability upon which the payments to Class Members would be based, but one that asserted the full range of wage and hour claims available under state law. Defendants appear to have purchased a broad

release, but any real money is going to counsel for Plaintiff and Plaintiff himself, not to the Class Members they represent.

Based on the allegations in the actual complaint, and the breadth of the actual release, the settlement does not appear to fall within the range of possible approval. At the very least, Plaintiff has not provided further elaboration of his conclusory assertion that the settlement is "clearly fair, adequate, and reasonable and that it provides for reasonable compensation to Class Members." Motion at 15. Plaintiff did not submit any information that would enable the Court to determine that the settlement falls within the range of possible approval, including information establishing the maximum recovery Plaintiff could have obtained if the action were concluded on the merits in his favor, or why such a wide range of claims, including claims with associated penalties, have been released with a payment that corresponds to such a small fraction of the multitudinous allegations in the complaint. Absent such information, the Court cannot assess whether the proposed settlement is reasonable.

**B. Re-filing of the Case**

The proposed settlement before this Court has most of the shortcomings that Judge Alsup's initial "Notice Regarding Factors to be Evaluated For any Proposed Class Settlement" was designed to eliminate. For example: 1) the settlement contemplates that claims of absent class members will be released even for those whose class notice is returned as undeliverable; 2) the settlement allows for a reversion of substantial settlement funds to the Defendants; 3) the settlement includes an agreement as to attorney's fees; 4) the settlement itself was negotiated before class certification, without a motion for appointment of interim class counsel (in fact, *before* the filing of the current Complaint); and 5) the settlement includes an incentive payment to Plaintiff that far exceeds the potential payment to other class members. This list is not exhaustive. The settlement engineered by the parties appears to have yielded the results the Notice was designed to curb, and this Court is

certainly aware of the parties' work-around, which has the strong smell of forum shopping.

Regardless of the fact that the parties ignored the guidelines originally prescribed to their case,

however, this Court cannot approve the settlement before it because the proposed settlement does

not measure up to the requirements of Rule 23.

## CONCLUSION

For the above reasons, the Court declines to transfer the case to the Central District of

California and concludes that Plaintiff has failed to demonstrate that conditional class certification

under Rule 23(a) and (b)(3) or preliminary approval of the class settlement is warranted.  Plaintiff's

Motion to Transfer and Motion for Preliminary Approval are denied.

**IT IS SO ORDERED.**

Dated: March 25, 2013

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

1   **C12-03783 HRL Notice will be electronically mailed to:**

2   Carrie Anne Gonell: cgonell@morganlewis.com, pmartin@morganlewis.com

3   John David Hayashi: jhayashi@morganlewis.com, dghani@morganlewis.com

4   Molly Ann DeSario: mdesario@scalaw.com, grafal@scalaw.com, jmusgrave@scalaw.com,
    kngo@scalaw.com, kweekes@scalaw.com, mbainer@scalaw.com, scole@scalaw.com,
5   vantonian@scalaw.com

6   Scott Edward Cole: scole@scalaw.com, cdavis@scalaw.com, jmusgrave@scalaw.com,
    kngo@scalaw.com, Mbainer@scalaw.com, mdesario@scalaw.com
7
8   **Counsel are responsible for distributing copies of this document to co-counsel who have not
    registered for e-filing under the court's CM/ECF program.**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California