**United States District Court**
For the Northern District of California

1                                                           **\*E-Filed: April 28, 2014\***

2

3

4

5

6

7                                           NOT FOR CITATION

8                     IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11 THOMAS LUSBY, ET AL., individually      No. C12-03783 HRL
   and on behalf of all others similarly situated,

12                                **INTERIM ORDER RE PLAINTIFFS'**
                                  **AMENDED MOTION FOR**
13             Plaintiffs,               **PRELIMINARY APPROVAL OF**
     v.                               **CLASS ACTION SETTLEMENT**
14 GAMESTOP INC., ET AL.,                **AGREEMENT**

15             Defendants.             **[Re: Docket No. 33]**
   _____/

16

17       Plaintiffs, representing a putative class, sue Gamestop Inc. and Gamestop Corporation

18 (collectively, "Gamestop") asserting various wage and hour claims.  In March 2013, the Court

19 denied a motion for preliminary approval of class action settlement.  A First Amended Complaint

20 was filed in October adding a few new plaintiffs, and in November they filed the instant Amended

21 Motion for Order: (1) Granting Preliminary Approval of Class Action Settlement Agreement; (2)

22 Granting Conditional Certification of the Settlement Class; (3) Appointing Class Counsel; (4)

23 Appointing Class Representative; (5) Appointing Claims Administrator; and (6) Approving Class

24 Notice and Claim Form and Timeline for Administration.  *See* Dkt. No. 33.  A hearing on the

25 motion was held in December in which the Court expressed several concerns, most of which were

26 addressed in the Second Supplemental Declaration of Molly A. DeSario filed in January 2014.

27 However, the Court still has some concerns that were not alleviated by counsel's declaration,

28 particularly with respect to the calculation of settlement amounts.

**United States District Court**
For the Northern District of California

**LEGAL STANDARD**

Settlement of a class action requires judicial review and approval. *See* Fed. R. Civ. P. 23(e). At the preliminary fairness stage, the court must assess the validity of the settlement class pursuant to Rule 23(a) and (b), as well as evaluate the fairness, reasonableness and adequacy of the settlement agreement pursuant to Rule 23(e). Although the court's role in reviewing a proposed settlement, is critical, it is also a limited one. The court does not have the ability to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citations omitted) (internal quotation marks omitted). The court may, however, voice its reservations about the proposed settlement and set conditions that, if satisfied, might lead the court to approve it. *See* Fed. Judicial Ctr., *Manual for Complex Litigation* § 21.61 (4th ed. 2004).

**DISCUSSION**

A.  Settlement Calculation

As is relevant here, the class is divided into four subclasses corresponding to four positions or job titles: Game Advisor (GA), Senior Game Advisor (SGA), Assistant Store Manager (ASM) and Store Manager (SM). Before any payments are made to individual claimants, the Net Settlement Amount is first distributed among the four subclasses. This distribution is initially calculated based on the total number of weeks worked by employees in each subclass. Thus, because more class members were employed as GAs than any other position, more weeks were worked by GAs, and the GA subclass is initially apportioned the largest share. However, GAs typically earn the lowest hourly wage and work the fewest hours. To account for these differences among the subclasses, as well as the fact that the claims may not apply to each subclass with equal force, the settlement agreement provides that a multiplier is to be applied to the initial workweek-based distribution. "The parties agree that the average hourly rate for members of each Subclass will serve as a reasonable proxy of differences in hourly rates, average hours worked, and claims, and will serve as a multiplier to allocate additional settlement funds to certain Subclasses." *See* DeSario Decl., Ex. A, at ¶ 57(B).

2

**United States District Court**
For the Northern District of California

1    The Court is concerned that the average hourly rate of each subclass may not be a reasonable

2    proxy for all three factors.  Certainly, the average hourly rate is a reasonably proxy of differences in

3    hourly rates.  But, to be a reasonable proxy for all three factors taken together, the second and third

4    factors, average hours worked and claims, must then offset one another to some extent.  The parties

5    have represented that, in addition to earning a higher hourly wage, the more senior positions also

6    work progressively more hours per week.  Thus, to balance out, the senior positions must have

7    progressively fewer or weaker claims if the average hourly rate is to remain a reasonable proxy.

8    However, that does not appear to be the case.  For example, that the more senior positions

9    work longer hours would tend to increase the likelihood that they suffered violations related to

10   overtime and meal or rest breaks.  Additionally, it appears that GAs were less likely to have

11   performed bank runs or interstoring, responsibilities which form the basis of the failure to reimburse

12   claims.  Accordingly, it seems that, in addition to earning a higher hourly wage and working more

13   hours per week, class members in the more senior positions also have more claims to assert, in

14   which case the average hourly wage would not be a very reasonable proxy for all three factors.

15   On the other hand, it is possible that the junior positions have stronger claims.  Or it could

16   certainly be that the applicability of claims to subclasses is too uncertain or inconsistent across the

17   subclasses to be quantifiable.  Regardless, though, the average hours per week for each subclass is

18   easily quantifiable.  At the hearing, counsel represented that SMs typically work five full shifts per

19   week, ASMs four, and GAs/SGAs between one and three.  The Court thinks that incorporating the

20   average hours per week into the multiplier would more fairly account for the differences among

21   subclasses.  Particularly since the parties are using workweeks to determine the settlement amount,

22   it seems more equitable to incorporate into the multiplier both the average hourly wage and average

23   hours per week, effectively the average weekly wage.

24   The parties may have good reason to believe that average hourly rate alone is a more

25   reasonable proxy and that incorporating the average hours worked would unfairly skew the

26   distribution.  Whatever the case may be, the parties shall explain why "the average hourly rate for

27   members of each Subclass [is] a reasonable proxy of differences in hourly rates, average hours

28   worked, and claims, and will serve as a multiplier to allocate additional settlement funds to certain

**United States District Court**
For the Northern District of California

1  Subclasses." While the differences between the subclasses with respect to hourly rates and average

2  hours worked are understood, the parties shall specifically address how the claims apply to the

3  subclasses and are factored into the multiplier. Moreover, they are invited to consider the Court's

4  suggestion to incorporate average hours per week into the multiplier and opine as to whether doing

5  so would make for a more equitable distribution.

6    B.  Additional Information

7    At the hearing, the parties estimated that claimants would receive between $7.75 and $8.38

8  per workweek based on 30% participation. The Court would like the parties to provide the specific

9  figures for each subclass as well as a revised estimate based on any proposed amendment.

10  Additionally, the Court requests an estimate based on 100% participation and an estimate of the

11  potential recovery if the class members were to prevail on each of their claims.

12    Finally, the Court previously requested but did not receive an estimate of Gamestop's share

13  of payroll taxes that would be deducted from the Net Settlement Amount.

14                    **CONCLUSION**

15    The parties shall file a response to the issues discussed above within 14 days of the date of

16  this order.

17    **IT IS SO ORDERED.**

18  Dated: April 28, 2014

19                                    _____
                                      HOWARD R. LLOYD
                                      UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

1   **C12-03783 HRL** N**otice will be electronically mailed to:**

2   Carrie Anne Gonell     cgonell@morganlewis.com, pmartin@morganlewis.com

3   John David Hayashi     jhayashi@morganlewis.com, dghani@morganlewis.com

4   Molly Ann DeSario     mdesario@scalaw.com, grafal@scalaw.com, jmusgrave@scalaw.com,
    kweekes@scalaw.com, mbainer@scalaw.com, mkim@scalaw.com, mmedrano@scalaw.com,
5   scole@scalaw.com

6   Scott Edward Cole     scole@scalaw.com, cdavis@scalaw.com, jcampbell@scalaw.com,
    jmusgrave@scalaw.com, Mbainer@scalaw.com, mdesario@scalaw.com, mkim@scalaw.com,
7   mmedrano@scalaw.com

8   **Counsel are responsible for distributing copies of this document to co-counsel who have not**
    **registered for e-filing under the court's CM/ECF program.**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5