*E-Filed: March 31, 2015*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THOMAS LUSBY, SCOTT WILSEY, RUDAE BROWN, and DINA LE FEVRE, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>GAMESTOP INC. and GAMESTOP CORPORATION,<br><br>Defendants. | No. C12-03783 HRL<br><br>**ORDER:**<br><br>**(1) AWARDING ATTORNEYS' FEES TO CLASS COUNSEL;**<br>**(2) AWARDING REIMBURSEMENT OF LITIGATION EXPENSES;**<br>**(3) AWARDING SERVICE ENHANCEMENTS TO CLASS REPRESENTATIVES;**<br>**(4) AWARDING REIMBURSEMENT OF CLAIMS ADMINISTRATION FEES AND COSTS;**<br>**(5) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND**<br>**(6) DISMISSING ACTION WITH PREJUDICE**<br><br>**(Re: Dkt. Nos. 51, 52)** |

Class Representatives Thomas Lusby, Scott Wilsey, Rudae Brown, and Dina LeFevre assert wage and hour claims against Defendants Gamestop Inc. and GameStop Corp. The Class Representatives move for an order: (1) awarding attorneys' fees to class counsel; (2) awarding reimbursement of litigation expenses; (3) awarding service enhancements to class representatives; (4) awarding reimbursement of claims administration fees and costs; (5) granting final approval of class action settlement; and (6) dismissing action with prejudice. Dkt. Nos. 51, 52.

**BACKGROUND**

In August 2011, Lusby filed this action against GameStop, Inc., GameStop Corp., and Does 1-100 in the San Francisco County Superior Court, Case No. CGC-11-513220. In November 2011, GameStop removed the action, Case No. 11-CV-05361 WHA. Plaintiff voluntarily dismissed the action in February 2012.

The parties participated in mediation in April 2012. The parties did not reach a settlement at mediation, but through continued negotiations, the parties reached an agreement in principle in May 2012. The parties later reached an agreement as to the final settlement terms, and the named parties and their respective counsel executed the Settlement and agreed to its terms in July 2012.

On July 19, 2012, Plaintiff re-filed the action in this Court along with a motion for preliminary approval of the parties' Settlement. In March 2013, the undersigned identified certain concerns with the Settlement and denied Plaintiff's motion. In October 2013, Plaintiffs filed a First Amended Complaint ("FAC"), adding additional class representatives to represent each of the positions covered by the Settlement and providing more detail about the nature of the claims, job duties of each position, and rates of pay of each position.

In November 2013, Plaintiffs filed a renewed motion for preliminary approval of the Settlement. Dkt. No. 33. At the December 12, 2013 hearing for the motion, the undersigned asked for additional information, particularly with regard to the formula for allocation of settlement funds. In response, Plaintiffs filed supplemental declarations on January 10 and 16, 2014, with proposed revisions to the settlement terms and class notice materials, and an estimate of the payroll taxes that would be paid from the proposed settlement. *See* Dkt. Nos. 36, 37. The Court issued an Interim Order in April 2014, seeking further information regarding the allocation of settlement funds to the subclasses, estimated settlement amounts, and GameStop's estimated exposure based on Plaintiffs' claims. Dkt. No. 40. In response, Plaintiffs submitted a supplemental declaration of Molly A.

DeSario in May 2014. Dkt. No. 41. In May 2014, the Court issued a Second Interim Order inviting Plaintiffs to file a new motion for preliminary approval. Dkt. No. 42.

In July 2014, Plaintiffs filed a Second Amended Motion for Preliminary Settlement Approval, which the Court granted in September 2014. Dkt. Nos. 44, 48.

## DISCUSSION

### A.     Terms of the Settlement Agreement

The Settlement requires GameStop to pay $750,000 (the Gross Settlement Amount, or "GSA") to the group of Class Members who submit timely and valid claims, with any unclaimed funds distributed to participating Class Members. The Settlement provides for payment of attorneys' fees (not to exceed $250,000) and costs (not to exceed $12,000), enhancement awards to the named Plaintiffs ($7,500 each), payment to the Labor and Workforce Development Agency ("LWDA") for a release of Private Attorneys' General Act ("PAGA") claims ($3,750), and claims administration costs estimated to be $40,000.

Class Members had sixty days from the date the Claims Administrator mailed the Class Notice and Claim Form to submit claims, exclude themselves, or object to the Settlement. The Claims Administrator calculated pro rata settlement payments to Class Members based on each Class Member's relative percentage of eligible employee service time in the Settlement Class, as reflected by GameStop's internal records, the position(s) the Class Member worked, the average hourly rate of that position, and the average scheduled hours per week for the position.

In order to address the difference in hourly rate, typical hours worked per shift, and typical hours worked per workweek, the Settlement divided the Settlement Class into eight subclasses based on the job position a Settlement Class Member held and whether the Class Member terminated their employment during the waiting time penalty eligibility period under Labor Code Section 203.

To settle waiting time penalties for Settlement Class Members who left their employment with Defendant, there are four "former" employee subclasses. To account for the differences in the average hourly rate for these positions, members of the former employee subclasses will each receive one hour of pay at the average hourly rate for members of their respective subclass as

3

compensation for their waiting time penalty claims. Members of the former employee subclasses may only participate in one of the former employee subclasses, determined by the position held at the time of termination.

Settlement amounts for the other claims released in the Settlement have been divided into four additional subclasses by position. Both current and former employees are eligible to claim their respective share of the Net Settlement Amount ("NSA") based on the number of workweeks worked by the individual subclass members in relation to all workweeks worked by all subclass members. This amount was allocated between the subclasses by employing a formula based on: (1) number of workweeks worked by members of each subclass; (2) the average hourly rate for members of each subclass; and (3) the average scheduled hours worked per week by members of each subclass. For settlement share calculation purposes, the parties agreed that the average hourly rates of pay for each subclass will be as follows: $17.09 for SMs, $12.24 for ASMs, $9.86 for SGAs, and $8.58 for GAs. The parties also agreed that the average scheduled hours per week for each subclass for settlement purposes will be as follows: 44 hours/week for SMs, 38 hours/week for ASMs, 30 hours/week for SGAs, and 15 hours/week for GAs. The parties have also agreed that the formula modifier will serve as a reasonable proxy for the claims released by subclass members and the settlement value of those claims.

Class Member settlement payments will be allocated as 50% wages, 25% penalties, 20% interest, and 5% unpaid expenses. GameStop's portion of employee payroll taxes and related withholdings for the portion attributable to wages will be paid from the NSA. Settlement checks will be valid and negotiable for 180 days after they are mailed, after which they may be cancelled and funds donated to a charitable organization to be determined by the parties. Those Class Members who did not cash their checks will be deemed to have waived irrevocably any right in or claim to a settlement share. However, the Settlement Agreement and the release shall remain binding on the parties.

The Settlement Class will release all claims alleged in the litigation, including those claims expressly alleged in the FAC and related and derivative claims. The claims released by Class Members include all claims that in any way relate to the Class Members' compensation while employed by Defendant as overtime-eligible retail employees during the Class Period, including but

not limited to, any claims that were or could have been asserted in the complaint, claims that arise out of Defendant's alleged failure to provide meal and rest periods and failure to pay all wages to retail employees in California, claims for any type of relief, including, without limitation, claims for failure to pay overtime, failure to pay for all hours worked, failure to timely pay final wages, failure to provide meal and rest periods, failure to furnish accurate wage statements, failure to reimburse expenses, damages, unpaid costs, penalties (including waiting time penalties), penalties under PAGA, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, and equitable relief.

### B.     Attorneys' Fees and Costs

When a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the percentage-of-recovery method or the lodestar method. *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). "Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar. Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* Factors courts consider in determining the reasonableness of a percentage-of-recovery award include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *Knight v. Red Door Salons, Inc.*, No. 08–01520 (SC), 2009 WL 248367, *4 (N.D. Cal. Feb. 2, 2009). Of these factors, "[t]he overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Id.* Courts presiding over diversity actions, such as this action, apply the law of the forum state in calculating attorneys' fees. *Gonzalez v. S. Wine & Spirits of Am., Inc.*, 555 Fed. App'x 704, 704 (9th Cir. 2014).

Class Counsel requests an award of attorneys' fees in the amount of one third of the Gross Settlement Fund ("GSF"), or $250,000. This request comports with the Settlement Agreement, which provided that Class Counsel may seek a maximum of 33.33% of the GSF in attorneys' fees.

First, in regards to the results achieved, the Settlement made a non-reversionary fund of $750,000 available to approximately 13,872 Class Members. In addition, the Class Members will benefit from changes GameStop implemented in response to this action. For instance, GameStop implemented a new timekeeping system that, among other things, automatically pays meal premiums when meal breaks are missed or recorded late or short. GameStop has also significantly streamlined the process for employees to seek reimbursement of business expenses, including mileage. GameStop has also updated and clarified its polices to ensure that work is not performed off the clock, including requiring employees to undertake security checks while still clocked in.

Second, in regards to the risk of litigation, Plaintiffs faced significant risks such as the potential denial of class certification. The diversity of job positions and issues in the present litigation were challenges for class certification. In addition, GameStop would have likely challenged liability on a several grounds, including: (1) GameStop automatically pays meal period premiums when a meal period is missed, short, or late; (2) GameStop maintained a written policy that employee were required to submit to "pocket checks" while still on the clock; (3) in an amicus brief filed in *Integrity Staffing Solutions, Inc., v. Busk*, U.S. Supreme Court Case No. 13-433, at 10, the U.S. Department of Labor opined that post-shift anti-theft screenings are not integral and indispensible to the work performed, and are therefore noncompensable under the Fair Labor Standards Act, 29 U.S.C. § 254(a); (4) the amount of time spent on security checks was only a matter of seconds or minutes, making these claims de minimis; (5) the average distance between a GameStop store in California and its respective bank is half a mile, meaning it was in walking distance or was serviced by an armored car; and (6) the average mileage reimbursement per round-trip to the bank was approximately one dollar. Moreover, GameStop would have challenged liability by arguing that reimbursement claims lacked the necessary documentary evidence, that Labor Code Section 203 penalties require a "willfulness" finding that is unattainable, that missed rest periods were not recorded and therefore not compensable, that the meal period claims fail because the failure to "provide" could not be proven, or that Class Members did not suffer injury regarding any alleged wage statement deficiency. In addition, Defendant may have appealed if Plaintiffs prevailed at trial.

<div style="float:left">United States District Court<br>For the Northern District of California</div>

1  Third, in regards to the skill required and quality of work, Scott Cole & Associates, Class
2  Counsel, devotes itself primarily to prosecuting employment law matters and almost exclusively to
3  class actions. The firm has litigated a large number of wage and hour class actions dealing with
4  meal and rest break violations. It has achieved class certification in many different scenarios. *See,*
5  *e.g.*, *Kurihara v. Best Buy Co.*, 2007 U.S. Dist. LEXIS 64224 (N.D. Cal. Aug. 29, 2007); *Torres v.*
6  *ABC Security*, Case No. RG04158744 (Alameda Cnty. Sup. Ct.). Class Counsel developed an
7  extensive factual record to obtain the evidence needed to convince Defendant of the risks of
8  continued litigation. In addition, Class Counsel's history of successful prosecution of similar cases
9  made credible its commitment to pursue this action through trial and beyond.

10  Fourth, in regards to the contingent nature of the fee and the financial burden carried by
11  Plaintiffs, the prosecution of this action involved significant financial risks for Class Counsel. Class
12  Counsel undertook this matter on a contingent basis, with no guarantee of recovery of fees or
13  reimbursement of costs. Class Counsel prosecuted this case for over two years. Class Counsel
14  exposed itself to liability from more than 13,000 absent Class Members, as well as faced the risk
15  that nothing would be recovered. "Because payment is contingent upon receiving a favorable result
16  for the class, an attorney should be compensated both for services rendered and for the risk of loss
17  or nonpayment assumed by accepting and prosecuting the case." *In re Quantum Health Resources,*
18  *Inc. Sec. Litig.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997). Class Counsel devoted over 1,132 hours
19  to his case, and was forced to forgo additional work in order to pursue it.

20  Fifth, in regards to awards made in similar cases, the requested award is within the range of
21  awards approved by other districts within the Ninth Circuit. *See, e.g.*, *Singer v. Becton Dickinson &*
22  *Co.*, 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. June 1, 2010) (awarding 33.33%); *Burden*
23  *v. Selectquote Ins. Servs.*, 2013 U.S. Dist. LEXIS 109110, at *12-13 (N.D. Cal. Aug. 1, 2013)
24  (same); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (same).
25  "Where a settlement produces a common fund for the benefit of the entire class, . . . courts typically
26  calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate
27  explanation in the record for any 'special circumstances' justifying a departure." *In re Bluetook*
28  *Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

1	In this case, the complexity of litigating and negotiating the Settlement on behalf of over 13,000 Class Members, ranging from Game Advisors to Senior Game Advisors to Assistant Managers to Store Managers, in the face of the above described litigation risks, constitutes a special circumstance justifying an award greater than the benchmark. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (departing from benchmark due to "substantial risk class counsel faced, compounded by the litigation's duration and complexity").

Furthermore, the requested fee also comports with other courts' awards under the Lodestar approach. "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002). The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

As of November 14, 2014, Class Counsel devoted over 1,132 hours to litigating and settling this action. This total does not include any time spent on this case after November 14, 2014, though Class Counsel anticipated spending time after this date overseeing the remaining claims administration and payment of claims. Class Counsel's lodestar is $460,422.50, resulting in a negative multiplier of approximately .54. This is below the range found reasonable by other courts in California. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) (finding a multiplier of 3.65 to be reasonable); *Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 512 (2009) (finding multiplier of 2.52 to be "fair and reasonable").

**C.	Class Counsel's Costs**

The Court finds that Class Counsel's costs are reasonable and were incurred to benefit the class. Class Counsel incurred costs in the form of legal and factual research, photocopies, faxes, travel, postage, mediation, and telephone charges, totaling $10,819.64. In addition, Class Counsel will incur additional expenses while completing the distribution process. Such costs are appropriate for reimbursement. *See Leonard v. Baumer (In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Secs. Litig.)*, 1989 U.S. Dist. LEXIS 19146 (C.D. Cal. Mar. 9, 1989) (attorneys "whose efforts create a common fund for an identifiable class are entitled to recover their fees and costs from the class so benefited").

### D. Class Representatives Service Enhancements

Class Counsel requests Service Enhancements of $7,500 to each of the four Class Representatives. "[A] class representative is entitled to some compensation for the expense he or she incurred on behalf of the class lest individuals find insufficient inducement to lend their names and services to the class action." *West v. Circle K Stores, Inc.*, 2006 U.S. Dist. LEXIS 76558, at *26 (E.D. Cal. Oct. 19, 2006) (internal citations omitted). Compensation for class representatives "must be reasonable in light of applicable circumstances, and not 'unfair' to other Class Members." *Id.* at *27.

Plaintiffs contributed to the resolution of this case by providing detailed background information about Defendant's policies and procedures and the day-to-day mechanics of Defendant's operations. Plaintiffs made themselves available to Class Counsel throughout the litigation and settlement process and were willing to risk having their participation be an impediment to future employment. Moreover, the Class Representatives executed general releases in favor of GameStop which release a broader set of claims than those released by absent Class Members. Finally, because the Service Payment pool will not significantly reduce the amount of settlement funds available to the rest of the class, it is not unfair to other Class Members. The requested Service Enhancements are reasonable. *See Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, at *50-52 (N.D. Cal. Jan. 26, 2007) (approving $25,000 service payments to four named plaintiffs who "provided a great deal of informal discovery to Class Counsel"); *Minor v. FedEx Office & Print Servs.*, 2013 U.S. Dist. LEXIS 106655, at *7-8 (N.D. Cal. July 30, 2013) (awarding $15,000.01 to four named plaintiffs in recognition of their general release of claims).

### E. Claims Administration Costs

Class Counsel requests approval of $40,000 of administration costs, or approximately 5.3% of the Gross Settlement Amount. Class Counsel obtained bids from several class administrators to ensure the costs ultimately charged were reasonable. The efforts to obtain the bids involved numerous detailed conversations addressing issues of class size and composition, potential claims rates, and potential challenges to and efficiency opportunities in the administration of a class of over 13,000 people. The costs requested are consistent with similar class settlements. *See, e.g.*, *Schiller v. David's Bridal, Inc.*, 2012 U.S. Dist. LEXIS 80776, at *39-40 (E.D. Cal. June 11, 2012)

1  (awarding $28,000 administration costs from $518,000 settlement, or 5.4% of gross).  The Court
2  finds these costs to be reasonable.

### F.  Motion for Final Approval

To approve a proposed settlement of a class action under Rule 23(e), the Court must find that the proposed settlement is "fair, adequate and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003).  When making this determination, courts consider: (1) the strength of the case; (2) the size of the claims and amount offered to settle them; (3) the risk, expense, complexity, and likely duration of further litigation; (4) the stage of the proceedings, i.e., whether the plaintiffs and their counsel have conducted sufficient discovery to make an informed decision on settlement; (5) whether the class has been fairly and adequately represented during settlement negotiations by experienced counsel; and (6) the reaction of the class to the proposed settlement.  *Hanlon*, 150 F.3d at 1026.  When reviewing a motion for approval of a class settlement, a court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  A court must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.*

First, the risk, expense, complexity, and likely duration of continued litigation favor final approval.  The Court weighs the benefits of the Settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).  The Settlement provides to the Class Members the opportunity for a monetary recovery in a prompt and efficient manner, without the risk of the Court denying certification and recovering nothing.  The Class Members faced several risks, as discussed above, including the possibility that the Class Members' damages for meal period violations and/or failure to pay overtime compensation were de minimis or non-existent, and the Class lacked sufficient evidence to establish their damages for the alleged meal period violations and/or failure to pay overtime compensation.

Second, the amount offered in settlement favors final approval.  The highest claim is valued at $729.66, and the average value of each Class Member's claim is $257.20.  The settlement amounts are pro rata, based upon the number of weeks each Class Member worked during the

1  Settlement Class Period, divided by the total number of workweeks worked by all Class Members
2  during the Class Period.  The estimated per work week values for the various subclasses range from
3  $2.70 to $6.89.  By comparison, courts in other meal and rest break and overtime cases have
4  approved awards of similar amounts per workweek.  *See, e.g.*, *Valdez v. Neil Jones Co.*, 2014 U.S.
5  Dist. LEXIS 111766, at *15 (E.D. Cal. Aug. 11, 2014) ($3.00 per workweek), *Covillo v. Specialty's
6  Café*, 2013 U.S. Dist. LEXIS 153724, at *13-14 (N.D. Cal. Oct. 25, 2013) ($5.28 per workweek).
7  The Settlement represents a reasonable portion of Defendant's maximum exposure, discounted by
8  the risks of losing certification and/or liability, the expense of further litigation and the interest of
9  providing Class Members with a prompt, guaranteed recovery.

10  Third, the extent of discovery completed and stage of the proceedings support settlement.
11  Class Counsel interviewed numerous Class Members regarding the Class's claims and reviewed
12  policy documents and data points allowing it to assess the strength and value of the case.  The
13  parties had a "clear view of the strengths and weaknesses of their cases" at mediation, and the
14  settlement amount and terms were reached based on the parties' informed analysis of the strengths
15  and weaknesses of this case.  *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 103525, at *8 (S.D.
16  Cal. Dec. 2, 2008).

17  Fourth, the experience and views of Class Counsel favor final approval.  Class Counsel
18  possess extensive knowledge and expertise of the legal issues affecting the Class, are aware of the
19  risks of class action litigation, and are well-suited to evaluate the Settlement.  Based on their
20  experience in this area of law, Class Counsel support the Settlement as fair, adequate, reasonable,
21  and in the best interests of the Class.  "The recommendations of plaintiffs' counsel should be given
22  a presumption of reasonableness."  *Bellows*, 2008 U.S. Dist. LEXIS 103525, at *8.

23  Fifth, the Class Members' reaction favors final approval.  None of the Class Members have
24  objected to the Settlement, there was only one valid opt-out, and 1,621 Class Members submitted
25  claims.  "The reaction of the class members to the proposed settlement, or perhaps more accurately
26  the absence of a negative reaction, strongly supports settlement."  *Chun-Hoon v. McKee Foods
27  Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010).

### G. Notice Plan

The Court-approved notice plan satisfied due process and has been fully implemented. Rule 23(c)(2)(B) provides that the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice should describe: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, and/or defenses; (4) that a class member may enter an appearance through counsel if the member so desires; (5) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

Here, the class notice materials provided the definition of the Class, described the nature of the action, and explained the procedure for contesting data used to calculate estimated Class Member payments under the Settlement. The class notice provides specifics regarding the date, time, and place of the Final Approval hearing, and informed Class Members of their options upon receiving notice. It explained that the Settlement release will apply to the Class Members' claims unless they timely opted out of the Settlement. It also informed the Class that the Settlement amount would be used to compensate Plaintiff's Counsel for the approved amount of costs and fees and the named plaintiff's Service Enhancements.

The Class Administrator used the USPS National Change of Address List to verify the accuracy of all addresses before the initial mailing date to ensure that the class notice was sent to all Class Members at the addresses most likely to result in their immediate receipt. With respect to returned envelopes, the Claims Administrator performed address searches to obtain current addresses and re-mailed the Class Notice to those updated addresses. *See Gonzalez v. Preferred Freezer Servs. Lbf*, 2013 U.S. Dist. LEXIS 109930, at *4-5 (C.D. Cal. July 29, 2013) (finding notice constitutes "best notice practicable under the circumstances" where administrator performed skip-trace on all mail returned as undeliverable).

Class Members had 60 days from the date the Claims Administrator mailed the Class Notice to file claims, request exclusion, or object to the Settlement. This is sufficient time to give Class

Members the opportunity to comment on the Settlement. *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1127 (E.D. Cal. 2009) (approving 30 day notice period).

## CONCLUSION

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. All terms used herein shall have the same meaning as in the parties' Amended Joint Stipulation of Settlement and Release ("Settlement Agreement").

2. This Court has jurisdiction over the subject matter of this litigation and over all Settling Parties, including all Settling Plaintiffs.

3. Final approval is granted to the Settlement Class, consisting of all persons who are and/or were employed as overtime-eligible employees by GameStop, in one or more of GameStop's California retail stores, between June 21, 2010 and June 30, 2012 ("Class Members"), including the following subclasses:

   a. "SM Subclass:" Class Members who held the position of Store Manager or SM, Store Manager in Training or SMIT, and Area Manager or AM during the Class Period;

   b. "ASM Subclass:" Class Members who held the position of Assistant Store Manager or ASM during the Class Period;

   c. "SGA Subclass:" Class Members who held the position of Senior Game Advisor or SGA during the Class Period;

   d. "GA Subclass:" Class Members who held the position of Game Advisor or GA and Lead Game Advisor or GA and Lead Game Advisor or LGA during the Class Period;

   e. "Former SM Subclass:" Class Members whose employment with GameStop terminated prior to the filing of the original complaint while holding the position of Store Manager or SM, Store Manager in Training or SMIT, or Area Manager or AM;

   f. "Former ASM Subclass:" Class Members whose employment with GameStop terminated prior to the filing of the original complaint while holding the position of Assistant Store Manager or ASM;

   g. "Former SGA Subclass:" Class Members whose employment with GameStop terminated prior to the filing of the original complaint while holding the position of Senior Game Advisor or SGA;

   h. "Former GA Subclass:" Class Members whose employment with GameStop terminated prior to the filing of the original complaint while holding the position of Game Advisor or GA and Lead Game Advisor or LGA.

  4. The distribution of the Class Notice, Claim Form, and Request for Exclusion form, (collectively "Class Notice") to the Settlement Class as set forth in the Settlement Agreement has been completed in conformity with the September 9, 2014 Preliminary Approval Order. The Class Notice provided adequate notice of the proceedings and about the case, including the proposed settlement terms as set forth in the Settlement Agreement. The Class Notice fully satisfied due process requirements. The Class Notice was sent via U.S. Mail to all persons entitled to such notice and to all members of the Settlement Class who could be identified through reasonable effort. As executed, the Class Notice was the best notice practicable under the circumstances.

  5. The Court approves the terms set forth in the Settlement Agreement and finds that the Settlement Agreement is, in all respects, fair, adequate, and reasonable, and directs the Parties to effectuate the Settlement Agreement according to its terms. The Court finds that the Settlement Agreement has been reached as a result of good faith, arm's length negotiations between the Parties. The Court further finds that the Parties have conducted extensive investigation and research, and their attorneys are able to reasonably evaluate their respective positions. The Court also finds that settlement now will avoid additional and potentially substantial litigation costs, as well as delay and risks if the Parties were to continue to litigate the case. The Court finds that Class Counsel have adequately advanced their position on a contingent-fee basis, and their efforts have resulted in an adequate recovery for the Settlement Class.

  6. The Settlement Agreement is not an admission of liability or wrongdoing by Defendant or any other released party, nor is this Order a finding of the validity of any allegations or of any wrongdoing by Defendant or any other released party. Neither this Order, the Settlement Agreement, nor any document referred to here, nor any action taken to carry out the Settlement Agreement, may be construed as, or may be used as, an admission of any fault, wrongdoing, omission, concession, or liability whatsoever by or against Defendant or any of the other released parties.

7. Defendant shall pay the Settlement Class Members pursuant to the claim procedure described in the Settlement Agreement. Defendant shall have no further liability for costs, expenses, interest, attorneys' fees, or for any other charge, expense, or liability, except as provided in the Settlement Agreement.

8. The Court grants final approval of the allocation of $5,000 pursuant to California Labor Code sections 2698, *et seq.*, to the California Labor Code Private Attorneys General Act of 2004. Seventy-five percent of that amount will be payable to the California Labor and Workforce Development Agency, and the remaining twenty-five percent shall be payable to Settlement Class Members.

9. The Court finds that Defendant has served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the documentation required by 28 U.S.C. § 1715.

10. The Court finds that the Settlement Agreement has been drafted and entered into in good faith and constitutes a fair, reasonable, and adequate compromise of the Class Representative and Class Member Released Claims against Defendant and all other released parties.

11. Class Members who did not timely submit valid Claim Forms or Requests for Exclusion are bound by the Releases and waiver listed in the Settlement Agreement. Accordingly, as of the final judgment, members of the Settlement Class who have not been excluded are forever barred and enjoined from prosecuting the Released Claims during the Class Period against Defendant.

12. Judgment will be entered in accordance with the findings and Orders made herein. For all of the reasons set forth above, Plaintiff's Motion for Final Approval of Class Action Settlement is hereby **GRANTED**. This Action is dismissed in its entirety, on the merits, with prejudice, and without leave to amend, and Plaintiffs and the Settling Plaintiffs and Settling Parties are forever barred and enjoined from asserting any of the Released Claims in any court or forum whatsoever.

13. Under Rules 23, 54, and 58 of the Federal Rules of Civil Procedure, the Court, in the interests of justice, there being no reason for delay, expressly directs the Clerk of the Court to enter this Order, and hereby decrees that, upon its entry, it be deemed a final Judgment.

**IT IS FURTHER ORDERED THAT:**

14. The Court finds that Class Counsel has fairly and adequately represented and protected the interests of the Class at all times in this action. An award of attorneys' fees in the amount of

1  $250,000 is hereby approved and awarded to Class Counsel. This award constitutes one third of the
2  Gross Settlement Amount.

3       15.  The Court hereby finds that the amount of this award is supported by both the
4  application of the common fund and the lodestar-plus-multiplier methods for awarding reasonable
5  attorneys' fees. Both methods are available to the Court and produce the same result. Therefore, the
6  Court relies on each method as an independent basis for its determination of a reasonable award of
7  attorneys' fees and costs. Additionally, while this amount exceeds the Ninth Circuit's 25%
8  "benchmark" for common fund cases (*see Six Mexican Workers v. Az. Citrus Growers*, 904 F.2d
9  1301, 1311 (1990)), the Court finds the circumstances in this case justify a modest departure from
10 the benchmark. The Ninth Circuit has identified a number of factors courts may consider when
11 determining whether an award is reasonable and whether a departure from the benchmark is
12 appropriate, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and
13 the quality of work, and (4) the contingent nature of the fee and the financial burden carried by the
14 plaintiffs. *Eddings v. Health Net, Inc.*, 2013 U.S. Dist. LEXIS 84811 (C.D. Cal. June 13, 2013)
15 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)).

16      16.  Here, the complexity of litigating and negotiating this case involving diverse claims and
17 a variety of job positions, in the face of, inter alia, unsettled legal issues and the risk of denial of
18 class certification, as well as the substantial, non-reversionary settlement amount, constitute special
19 circumstances justifying an upward departure from the benchmark.

20      17.  Based on the foregoing factors, the Court finds the fee award sought by Class Counsel to
21 be fair and reasonable.

22 **IT IS FURTHER ORDERED THAT:**

23      18.  The costs of $10,819.64, which have already been incurred, as set forth by Class
24 Counsel, are fair, reasonable, responsible, and were incurred for the benefit of the Class. These types
25 of costs are appropriate for reimbursement and are hereby approved and shall be awarded to Class
26 Counsel.

27 **IT IS FURTHER ORDERED THAT:**

28      19.  The Court finds that the Representative Plaintiffs have contributed significantly to the
resolution of this case and have fairly and adequately represented and protected the interests of the

1  Class at all times in this Action. Among other efforts, Plaintiffs provided detailed background
2  information about Defendant's policies and procedures and the day-to-day mechanics of
3  Defendant's operations. Plaintiffs made themselves available to Class Counsel throughout the
4  litigation and settlement process and risked having their participation in this litigation be an
5  impediment to future employment. Plaintiffs also executed general releases including California
6  Civil Code section 1542 waivers, which encompassed broader sets of claims than those being
7  released by members of the Settlement Class. The Court notes that none of the Class Members have
8  objected to the proposed Service Enhancements and the awards will not significantly reduce the
9  amount of settlement funds available to the Class.

**IT IS FURTHER ORDERED THAT:**

20.  The Court finds that the services provided by the Claims Administrator were for the benefit of the Settlement Class, and the cost of $40,000 is fair, reasonable, and appropriate for reimbursement, pursuant to the terms of the Settlement Agreement. The Court approves payment to Gilardi & Co., LLC for claims administration expenses, which includes all costs and fees incurred to date, as well as estimated costs and fees involved in completing the administration of the Settlement Agreement.

**IT IS SO ORDERED.**

Dated: March 31, 2015

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C12-03783 HRL Order will be electronically mailed to:**

Carrie Anne Gonell    cgonell@morganlewis.com, pmartin@morganlewis.com

John David Hayashi    jhayashi@morganlewis.com, dghani@morganlewis.com

Molly Ann DeSario    mdesario@scalaw.com, mbainer@scalaw.com, mmedrano@scalaw.com, scole@scalaw.com

Scott Edward Cole    scole@scalaw.com, cdavis@scalaw.com, Mbainer@scalaw.com, mdesario@scalaw.com, mmedrano@scalaw.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**